# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA. | Case No. 1:11-cv-01845-SKO |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE** |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| APPROXIMATELY $10,000.00 IN U.S. CURRENCY, | **ORDER ISSUING FINAL JUDGMENT OF FORFEITURE** |
| Defendant. | (Doc. No. 38) |

## I. INTRODUCTION

On November 4, 2011, the United States ("Plaintiff" or the "Government") filed a complaint for forfeiture in rem against approximately $10,000 in U.S. currency ("defendant currency"). (Doc. 1.) On December 23, 2011, Tony Vue submitted a claim as a real party in interest asserting that he was the rightful owner of the $10,000. (Doc. 9.) On December 28, 2011, Mr. Vue filed an answer to the complaint. (Doc. 11.) On August 8, 2013, Plaintiff filed a motion to strike and a motion for default judgment and final judgment of forfeiture, and a hearing was noticed for September 27, 2013.[1] (Doc. 38.) No opposition to the motion was filed. Pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g), the Court finds this

---
[1] The Court reset the hearing for September 25, 2013. (Doc. 39.)

matter suitable for decision without oral argument, the matter is therefore taken under submission, and the September 25, 2013, hearing is VACATED.

For the reasons set forth below, Plaintiff's motion to strike is GRANTED; Plaintiff's motion for default judgment is GRANTED, and a final judgment of forfeiture is ISSUED.

## II.   BACKGROUND

Plaintiff alleges the following with respect to the background investigation:

5.   On March 24, 2011, an agent with the California Bureau of Narcotics Enforcement ("BNE"), working the in-bound sort at the FedEx Station in Clovis, California, noticed a suspicious package with an airbill number of 8756-9401-7874, which had been sent priority overnight, paid in cash, required no signature, and had no last name listed for either the sender or receiver. Based on the agent['s] training and experience, those factors led the agent to suspect the package contained contraband, such as currency from the sale of narcotics. The agent then placed a telephone call to the phone number listed on the airbill for the sender, listed as "Tony," and discovered the number was a non-working number. The agent then placed a telephone call to the phone number listed for the recipient, listed as "Pazong." At this number an unidentified male answered and when asked, stated that "Pazong" was not there and hung up. The agent then redialed the number for "Pazong," and the call went directly to a non-working voicemail.

6.   Shortly thereafter, the agent called for a narcotics canine unit f[rom] the California Highway Patrol. The CHP officer arrived with drug-detecting canine D'Jino. The parcel was placed in a room, along with other parcels, and known not to store any controlled substances. Canine D'Jino alerted to the parcel, indicating the presence and/or odor of narcotics on the parcel. The agent then obtained a signed state search warrant that authorized the opening of the parcel. Inside the parcel the agent located a black t-shirt and a manila envelope containing the defendant currency. The defendant currency was in three bundles and secured with rubber bands. The total currency amounted to $10,00.00 (ten thousand dollars) in U.S. currency, made up of 1 ten-dollar bill, 287 twenty-dollar bills, 15 fifty-dollar bills, and 35 one-hundred-dollar bills.

7.   The FedEx Station manager informed the agent that an Asian male came to the counter and wanted to know the whereabouts of his package. He only verbally identified himself as "Jim" – a name which did not appear on the airbill. He was informed that FedEx was trying to locate his package. He then left.

8.   Several agents, all wearing identifiable police uniforms, delivered the package to the recipient address located at 6294 E. Balch Avenue in Fresno, California. After knocking on the door of the residence an individual who identified himself as Shoua Vang (hereafter "Vang") answered the door. An agent asked Vang about "Pazong," the named recipient on the package. Vang stated that

Pazong Vue (her[e]after "Pazong") was his wife. Vang further stated that the Balch Ave. residence belonged to Pazong's parents and that he was waiting there for the package because he is never at his own residence.

9. There were additional persons at the Balch Ave. residence – Sam Vue, Anthony Vue, and Nou Vue. The agent spoke with all three, and all denied expecting a package from FedEx, and denied knowing what was inside the package addressed to their residence.

10. When asked what was in the package, Vang initially claimed that he did not know. He [] then stated that there was between $8,000.00 and $9,000.00 in the package. When asked who sent the package Vang stated that Pazong's brother Tony Vue had sent the package. When asked what the money was form, Vang claimed that he was out of work and that they needed money for past due bills. Agents asked Vang if his wife Pazong was employed. Vang stated that Pazong worked as a manager for State Farm. Agents asked if Vang and Pazong had a bank account and Vang stated that they had an account at Wells Fargo. Agents asked Vang why Tony Vue had not simply sent a check and Vang stated that it was easier to send cash. Agents asked Vang if Pazong could come to the Balch Ave. residence. Vang called Pazong and she arrived at the residence shortly thereafter.

11. When questioned, Pazong claimed that her brother Tony Vue had sent the package and that it contained $10,000.00. Pazong stated that the money was to pay for her little sister's wedding. When asked if the money was for overdue bills, Pazong stated that it was not. Pazong stated that she was working two jobs and the money was for the wedding. When asked if she recognized the address and phone numbers listed on the airbill for her brother Tony Vue, Pazong stated that she did not. Pazong stated that she did not know her brother Tony Vue's date of birth, address or telephone number, nor did she know what Tony Vue did for a living. Pazong stated that she had no way of getting in touch with Tony Vue and that he only calls her.

12. The Employment Development Department ("EDD") has no records of employment for Tony Vue.

(Doc. 1, ¶¶ 5-12.)

Pursuant to the allegations in the complaint and the Order Regarding Clerk's Issuance of Warrant for Arrest of Articles *In Rem*, on November 21, 2011, the Clerk of Court issued a Warrant for Arrest of Articles *In Rem* for the defendant currency. The Warrant for Arrest was executed on the defendant currency on November 23, 2011.

On November 16, 2011, the Court issued an order authorizing public notice of the action via the official internet government forfeiture site www.forfeiture.gov for at least 30 consecutive days. (Doc. 4.) On November 22, 2011, Plaintiff published notice of the action consistent with

3

the Court's order and proof of the publication was filed with the Court on March 12, 2013. (Doc. 28.)

In addition to notice by publication, the Government delivered notices to individuals with a suspected potential interest in the defendant currency. On November 21, 2011, Plaintiff sent copies of the Complaint, Application and Order for Publication, Order Re Issuance of Clerk's Arrest Warrant, Warrant for Arrest of Articles *In Rem*, Order Setting Mandatory Scheduling Conference, Notice of Availability of Magistrate Judge, Notice of Availability Voluntary Dispute Resolution, and a notice-of-forfeiture letter dated November 21, 2011 (the "case documents"), to Anthony Vue, Sam Vue, and Nou Vue by first class U.S. Mail to their last-known address located at 6294 E. Balch Avenue, Fresno, California, 93721. On November 23, 2011, Plaintiff received a certified mail receipt signed by each of the potential claimants. (Doc. 33, Magee Amended Decl., ¶ 6)

Also on November 21, 2011, Plaintiff sent copies of the case documents to Pazong Vue and Shoua Vue at their last-known address located at 240 S. Clovis Avenue #112, Fresno, California, 93727. Plaintiff has not received any signed certified mail receipt or any return mail addressed to either Pazong Vue or Shoua Vue. (Doc. 32, Magee Decl., ¶ 6.)

On December 23, 2011, Tony Vue, through counsel, filed a verified claim to the defendant currency. On December 28, 2011, Tony Vue filed an Answer to the Complaint. (Doc. 11.) On March 6, 2012, the Court issued a scheduling order. On February 7, 2013, Plaintiff propounded a set of Request for Admissions, a Request for Production of Documents, Interrogatories, and Special Interrogatories. On March 14, 2013, Tony Vue's counsel was permitted to withdraw, and Tony Vue was granted an additional 20 days from the date of the order to respond to the Government's discovery responses. (Doc. 30.) No responses to the discovery were served by Tony Vue, and Plaintiff filed the pending motion to strike Tony Vue's Claim and Answer, for the entry of default judgment, and for the issuance of final judgment.

### III. DISCUSSION

**A.  Plaintiff's Motion to Strike**

    **1.  Legal Standards**

This action is governed by statute and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the Federal Rules of Civil Procedure.  Pursuant to 21 U.S.C. § 881(a), certain property is "subject to forfeiture to the United States."  Under Section 811(a)(6), "moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance" and "all proceeds traceable to such an exchange" are subject to forfeiture.  When the property has been seized, it is "deemed to be in the custody of the Attorney General."  21 U.S.C. § 881(c).  The Attorney General may then seek either criminal forfeiture, 18 U.S.C. § 982, or civil forfeiture, 18 U.S.C. § 983.

To commence a judicial civil forfeiture action, the United States files an in rem complaint against the property in the appropriate district court.  Any person wishing to intervene and assert an interest in the property must file two responsive pleadings:  (1) a verified claim; and (2) an answer.  18 U.S.C. §983(a)(4)(A), (B).  Supp. R. G(5).  The verified claim must "identify the specific property claimed," (2) "identify the claimant and state the claimant's interest in the property," (3) be signed by the claimant under penalty of perjury," and (4) be served on the government's attorney.  Supp. R. G(5)(a)(i).

Supplemental Rule G(6)(a) permits the government to serve special interrogatories limited to the claimant's identity and relationship to the defendant property.  The purpose of the rule is to permit the government to file limited interrogatories at any time after the claim is filed to gather information that bears on the claimant's standing.  Supp. R. G advisory committee's note (subdivision (6)).  The claimant must respond to the special interrogatories within 21 days.  Supp. R. G(1).

At any time prior to trial, the government may move to strike the claimant's claim or answer on the ground that the claim or answer does not comply with Supplemental Rule G(5), that the claimant has not responded to the special interrogatories propounded pursuant to Rule (g)(a), or that the claimant lacks standing.  Supp. R. G(8)(c).

**2.      Plaintiff's Motion to Strike Tony Vue's Claim and Answer is GRANTED**

Tony Vue filed a Claim on December 23, 2011 (Doc. 9), and an Answer on December 28, 2011 (Doc. 11).  At that time, Tony Vue was represented by counsel.  The parties appeared for a scheduling conference on March 1, 2012, and a schedule was set on March 6, 2012.  (Doc. 17.)

On February 8, 2013, Tony Vue's counsel, Mr. Mitchell, filed a motion to withdraw, indicating that counsel had been unable to communicate with his client.  Mr. Mitchell noted that he received "substantial discovery" requests from the government on February 8, 2013, that required him to consult with Mr. Vue, but Mr. Vue was unreachable.  As a result, Mr. Mitchell requested that he be permitted to withdraw as Mr. Vue's counsel of record.  The Court granted Mr. Mitchell's request, extended the nonexpert and expert deadlines to permit Mr. Vue additional time to find replacement counsel or elect to proceed pro se, and permitted Mr. Vue an additional 20 days to file responses to Plaintiff's outstanding discovery requests, which included the special interrogatories.  The Court's order was served on Mr. Vue at his last known address, and the order was *not* returned as undeliverable.

Following service of the Court's order, Mr. Vue failed to respond to Plaintiff's discovery requests.[2]  (Doc. 38-1, Jones Decl., ¶ 10.)   Plaintiff maintains that Mr. Vue's actions indicate that he has abandoned the litigation:  he failed to maintain communication with his attorney, failed to communicate with Plaintiff after his counsel was permitted to withdraw, and failed to respond to any discovery requests.  As a result, Plaintiff contends that his Claim and Answer should be stricken from the record. (Doc. 38, 10:3-7.)

Failure to prosecute an action is evidence of abandonment.  *See United States v. Real Property Located at 19650 Road 232, Strathmore, California, Tulare County*, No. 1:09-cv-1659-AWI-GSA, 2013 WL 3733519, at *8 (E.D. Cal. July 15, 2013), *recommendation adopted* 2013 WL 4459066 (E.D. Cal. Aug. 16, 2013); *see also United States v. Approximately $88,125.00 in United States Currency*, No. 3:10-cv-00486-MOC-DSC, 2013 WL 310062 (W.D.N.C. Jan. 13, 2013) (failure to produce discovery and to attend pretrial conference deemed abandonment of

---

[2] Plaintiff maintains that responses to the Special Interrogatories were due on February 28, 2013 (Doc. 38, 9:4-13), but that deadline was expressly extended by the Court's March 14, 2013, order. (Doc. 30, p. 4, ¶ 5.)

6

claim and warranted striking claim and answer). Based on Mr. Vue's failure to communicate with Plaintiff, respond to discovery, or participate in the litigation, Mr. Vue has abandoned his claim. Because the Court finds that Tony Vue has failed to respond to Plaintiff's discovery and has evidenced an intent to abandon his claim, Plaintiff's motion to strike his claim and answer is GRANTED. As such, the Clerk of Court is DIRECTED to enter Tony Vue's default.

**B.   Plaintiff's Motion for Default Judgment and Issuance of Final Judgment of Forfeiture**

Plaintiff seeks judgment against the interests of Mr. Vue and also seeks final judgment of forfeiture against all known and unknown potential claimants. Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default judgment against a party after the clerk has entered the party's default. In considering whether to enter default judgment, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decision on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cit. 1986).

In the context of an *in rem* forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Federal Rules of Civil Procedure, Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and *in rem* actions. *See United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir. 1994), *superseded by statute on other grounds* (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules).

**1.   Procedural Requirements**

**a.   Sufficiency of the Complaint**

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support

7

a reasonable belief that the Government will be able to meet its burden of proof at trial. Supp. R. G(2).

With regard to the sufficiency of the factual detail of the verified complaint, the Government is not required to show a relationship between the proceeds of a drug crime and a specific drug transaction. Rather, circumstantial evidence may support the forfeiture of the proceeds of a drug crime. *See United States v. $30,670.00*, 403 F.3d 448, 467-70 (7th Cir. 2005) (concluding that the totality of the circumstances demonstrated that an airline passenger's cash hoard was connected to drug trafficking and subject to forfeiture); *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (applying totality of the circumstances to determine that cash carried by airline passenger was the proceeds of, or traceable to, an illegal drug transaction).

Here, the complaint provides a legal description of the property, states the grounds for jurisdiction and venue, and identifies the statute under which the action is brought. The Government contends that the verified complaint establishes circumstantial evidence indicating that the defendant currency was furnished or intended to be furnished in exchange for a controlled substance or listed chemical and is subject to forfeiture pursuant to Section 881(a)(6). Pursuant to 21 U.S.C. § 881(a)(6), the following is subject to forfeiture to the United States:

> (6)   All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 811(a)(6).

Based on the allegations in the complaint, there is sufficient evidence of a connection between the defendant currency and illegal drug activity to support a forfeiture.

### b.   Notice by Publication

Subject to certain exceptions not present here, the Supplemental Rules require the Government to publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and name of the government attorney to be served with the claim and answer. Supp. R.

1  G(4)(a)(ii)(A)-(C).  This notice requirement may be satisfied by posting a notice on an official
2  internet government forfeiture site for at least 30 consecutive days.  Supp. R. G(4)(a)(iv)(C).  The
3  Eastern District's Local Rules provide that the court shall designate by order the appropriate
4  newspaper or other vehicle for publication.  L.R. 171.

5        Here, the Government filed a Declaration of Publication stating that notice had been
6  created and published on the government forfeiture site, www.forfeiture.gov, for 30 consecutive
7  days.  (Doc. 28.)  A copy of the notice was attached to the Declaration of Publication, and it
8  described the property with reasonable particularity including the amount of the currency and the
9  location where it was seized.  (Doc. 28, p. 3.)  The notice clearly stated the time requirements to
10 file a claim and an answer.  (Doc. 28, p. 3.)  Further, the notice provided the name of the attorney
11 to be served with any claim and answer.  (Doc. 28, p. 3.)  Thus, the Supplemental Rule's notice-
12 content requirements have been satisfied.  Supp. R. G(4)(ii)(A)-(C).

13       **c.**     **Personal Notice**

14       When the Government knows the identity of the property owner, the Due Process Clause
15 of the Fifth Amendment requires "the Government to make a greater effort to give him notice than
16 otherwise would be mandated."  *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir.
17 1998).  In such cases the Government must attempt to provide actual notice by means reasonably
18 calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.
19 *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  "Reasonable notice, however, requires
20 only that the [G]overnment attempt to provide actual notice; it does not require that the
21 [G]overnment demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v.*
22 *United States* 417 F.3d 1189, 1197 (11th Cir. 2005); *Real Property*, 135 F.3d at 1316.

23       The Supplemental Rules indicate that the Government must send notice of the forfeiture
24 action "to any person who reasonably appears to be a potential claimant on the facts known to the
25 government."  Supp. R. G(4)(b)(i).  The notice must include the following information: the date
26 when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent;
27 that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim;
28 and the name of the government attorney to be served with the claim and answer.

Here, the Government provided notice of the forfeiture action to Tony Vue, Pazong Vue, Shoua Vang, Anthony Vue, Sam Vue, and Nou Vue through first class mail and certified mail. (Doc. 32, Magee Decl., ¶¶ 5-6.)  As required by the Supplemental Rules, the notice informed the potential claimants the date on which the notice was sent, the deadline for filing a claim, that an answer or a motion under Rule 12 was to be filed no later than 21 days after filing a claim, and that any document filed with the Court "must be served on this office," directing service to the office of Benjamin B. Wagner, United States Attorney for the Eastern District of California located at 2500 Tulare Street, Fresno California.[1]  (Doc. 32, Magee Decl., Exhibits A-E.)  The notice factor has been satisfied.

### d. The Time to File a Claim or an Answer

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right against the defendant vehicle must have filed a claim with the Court within the time specified by the direct notice.  Supp. Rule G(4)(b)(ii)(B), (5)(a)(ii)(A).  Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property*, 135 F.3d at 1317.  In this case, no claim or answer was filed by Pazong Vue, Shoua Vang, Anthony Vue, Sam Vue, and Nou Vue, and their defaults were entered on April 11, 2013.  (Docs. 33-37).  Tony Vue filed a Claim and an Answer, but they have been stricken and the Court has directed that his default be entered.  Because the time to file and Claim or an Answer is passed, no one has standing to oppose the forfeiture.

### e. Conclusion

The Government has met the procedural requirements applicable to civil *in rem* forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules of the Eastern District.  This favors the entry of default judgment and the issuance of final judgment in forfeiture to vest in the United States all right, title, and interest in the defendant currency.

---

[1] The notice provides the name of the United States Attorney, Benjamin B. Wagner, indicating that service of any claim or answer must be served on the office of the United States Attorney for the Eastern District of California, at 2500 Tulare Street, Suite 4401, Fresno, California.  This satisfies the notice to known potential claimants pursuant to Supplemental Rule G(4)(b)(ii)(D).

**2.     Discretionary *Eitel* Factors**

Beyond satisfaction of the procedural requirements, the discretionary *Eitel* factors outlined by the Ninth Circuit also favor granting the Government's motion for default judgment.  First, the Government would be prejudiced by the denial of its motion spending additional time and effort litigating an action in which the only claimant who appeared has abandoned his claim and default is entered against him.  Second, the Government's claims appear to have merit.  Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem*, including the filing of a sufficient complaint.  Fourth, the item that was seized and subject to forfeiture is not of such substantial value as to warrant denial of the Government's motion.  Fifth, there are no genuine issues of material fact that are disputed.  Sixth, there is no evidence that the failure of any claimant to answer or Tony Vue's abandonment is due to excusable neglect.  Finally, although merits-based decisions are always preferred, it is not practical where the only claimant appearing has abandoned the action, and this factor is outweighed by the remainder of the *Eitel* factors.

### IV.     CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Tony Vue's Claim and Answer are STRICKEN;
2. The Clerk of Court shall enter default against Tony Vue;
3. The Government's Motion for Default Judgment against the interests of Tony Vue, Pazong Vue, Shoua Vang, Anthony Vue, Sam Vue, and Nou Vue in the defendant currency is GRANTED; and
4. Final forfeiture judgment against all known and unknown potential claimants shall be issued vesting in the United States all right, title, and interest in the defendant currency.

IT IS SO ORDERED.

Dated:     **September 19, 2013**                    **/s/ Sheila K. Oberto**
                                                       UNITED STATES MAGISTRATE JUDGE